**Robert G. TILTON, an individual, Plaintiff,**

v.

**CAPITAL CITIES/ABC INC., a New York corporation; American Broadcasting Companies, Inc., a Delaware corporation; ABC News, Inc., a Delaware corporation; Diane Sawyer, an individual; Robbie Gordon, an individual; and Kelly Sutherland, an individual, Defendants.**

**No. 92–C–1032–B.**

United States District Court, N.D. Oklahoma.

May 13, 1993.

Sheila Miller Bradley, Ted J. Nelson, J.C. Joyce, John C. Joyce, Joyce & Pollard, Tulsa, OK, for plaintiff.

Floyd Abrams, Susan Buckley, David G. Januszewski, Cahill, Gordon & Reindel, New York City, Harvey D. Ellis, Jr., Clyde A. Muchmore, Anton J. Rupert, Crowe & Dunlevy, Oklahoma City, OK, W. Kyle Tresch, Crowe & Dunlevy, Tulsa, OK, for defendants.

---

## ORDER

BRETT, District Judge.

This matter comes on for consideration of Plaintiff Robert G. Tilton's Application For Temporary Restraining Order, Preliminary Injunction And Permanent Injunction pursuant to Rule 65, Federal Rules of Civil Procedure.

Plaintiff, Robert G. Tilton (Tilton), a Dallas, Texas televangelist, seeks a Temporary Restraining Order and other injunctive relief against Defendants who own and operate television broadcasting network ABC. Defendants, through their nationally televised program "*Prime Time* Live", disseminated on November 21, 1991, a broadcast regarding the ministry of Tilton which allegedly defamed and/or portrayed Tilton in a false light. On July 9, 1992, Defendants broadcast a shortened version of its November, 1991, Tilton piece on "*Prime Time* Live" together with a follow-up segment. Tilton also alleges this broadcast defamed and/or falsely portrayed him.

In his Application for injunctive relief, Tilton alleges that he has received information that Defendants are presently considering rebroadcasting and republishing the same alleged false speech and/or false light portrayal concerning him. Tilton alleges that on May 11, 1993, an ABC affiliate aired a promotion for future *Prime Time* Live broadcasts showing a picture of Tilton, leading Tilton to believe a rebroadcast was imminent.

Tilton argues he is not seeking prior restraint of any new broadcast material but is only seeking to enjoin the previously broadcast program segments, thereby avoiding any First Amendment[1] infringement of Defendants' freedom of speech. Tilton further argues that his freedom of religion rights under the First Amendment would be abridged by Defendants' continuous broadcasting of the same libelous material in that his ability to save thousands of souls at religious crusades and through televangelism would be severely hampered. Tilton argues a Temporary Restraining Order should issue forthwith because otherwise he will suffer irreparable harm, i.e. the loss of his freedom of religion rights.

In order to prevail herein on his Application For Temporary Restraining Order, Tilton must show:

(1) that he will suffer irreparable injury unless the injunction issues:

(2) that the threatened injury to him outweighs whatever damage the proposed injunction may cause the Defendants;

(3) that the injunction, if issued, would not be adverse to the public interest; and

(4) that there is a substantial likelihood that he will eventually prevail on the merits. *Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1198 (10th Cir.1992); *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980).

### IRREPARABLE INJURY

■  Generally, injunctive relief will not issue if there is an adequate remedy at law. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07, 79 S.Ct. 948, 954–55, 3 L.Ed.2d 988 (1959). In libel actions monetary damages are considered to be an adequate and appropriate remedy. *In re Providence Journal Co.*, 820 F.2d 1342, 1345 (1st Cir.1986), *modified on rehearing en banc on other grounds*, 820 F.2d 1354 (1st Cir.1987), *cert. dismissed*, 485 U.S. 693, 108 S.Ct. 1502, 99 L.Ed.2d 785 (1988). This is the rule in both Oklahoma and Texas. *Schmoldt v. Oakley*, 390 P.2d 882 (Okla.1964); *Hajek v. Bill Mowbray Motors, Inc.*, 647 S.W.2d 253, 254 (Tex. 1983) (*per curiam* ); *Corpus Christi Caller–Times v. Mancias*, 794 S.W.2d 852 (Tex.Ct. App.1990); *Pirmantgen v. Feminelli*, 745 S.W.2d 576 (Tex.Ct.App.1988); *Dallas Oil & Gas, Inc. v. Mouer*, 533 S.W.2d 70, 74 (Tex. Civ.App.1976).

■  Tilton argues that he will be irreparably harmed by another broadcast because a significant percentage of his followers will turn away from his preachings and others will not be reached because of his current preoccupation with this litigation, all in violation of his freedom of religion rights as guaranteed by the First Amendment. The Court disagrees. If Tilton is successful on the merits herein at trial, any damages awarded would be adequate compensation for any financial injury suffered. Further, the First Amendment's provision that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise

---

bation could be revoked in the event that he does not in good faith make full payment.

1.  United States Constitution.

**674**

thereof" does not, in the Court's view, contemplate a private libel suit against a nongovernmental entity publishing or broadcasting for a profit.

The Court concludes Tilton has not demonstrated irreparable harm sufficient to entitle him to the entry of a Temporary Restraining Order pursuant to Rule 65, F.R.Civ.P.

## BALANCING THE EQUITIES

The First Amendment accords publishers and broadcasters protection against prior restraint. The Courts view as potential grave danger to the free press attempted prior restraint, which is "the most serious and the least tolerable infringement on First Amendment rights". *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 559, 96 S.Ct. 2791, 2803, 49 L.Ed.2d 683 (1976). Although not unconstitutional *per se,* prior restraints on the press, in order to be lawful, "must fit within one of the narrowly defined exceptions to the prohibition against prior restraints …" *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 559, 95 S.Ct. 1239, 1247, 43 L.Ed.2d 448 (1975). No such exception has been shown herein.

The Court concludes there exists a conflict as to any threatened injury to Plaintiff Tilton in relation to the damage an injunction would cause.

## THE PUBLIC INTEREST

■ Criticism of religions and of religious leaders is ancient. Faiths, their followers and their leaders, inveigh against one another with a ferocity that belies their calling. What is doctrine to one is doggerel to another. Libel laws exist for those who are falsely accused.

The public interest is better served by the most benign and liberal treatment of religious criticism. Excesses and abuses of the liberties should be tolerated as "essential to the enlightened opinion and right conduct on the part of the citizens of a democracy." *Cantwell v. Connecticut,* 310 U.S. 296, 310, 60 S.Ct. 900, 906, 84 L.Ed. 1213 (1940).

The Court concludes Plaintiff has failed to establish that the injunction, if issued, would not be adverse to the public interest.

## LIKELIHOOD OF SUCCESS ON THE MERITS

In the Court's view, Tilton, an admitted public figure, faces a difficult task in showing both falsity of content and malice by clear and convincing evidence. *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Carr v. Brasher,* 776 S.W.2d 567 (Tex.1989); *Miskovsky v. Oklahoma Publishing Co.,* 654 P.2d 587 (Okla.1982), *cert. denied,* 459 U.S. 923, 103 S.Ct. 235, 74 L.Ed.2d 186 (1982).

The Court concludes Plaintiff has failed to demonstrate his substantial likelihood of succeeding on the merits.

## SUMMARY

Plaintiff's Motion For Temporary Restraining Order should be and the same is hereby DENIED. A hearing on the Preliminary Injunction and Permanent Injunction sought by Plaintiff will be held on May 25, 1993, at 9:00 a.m.

IT IS SO ORDERED.