SOUTHWEST WEATHER RESEARCH, INCORPORATED, ET AL V.
GEORGE ASA JONES ET AL.

No. A-7199. Decided July 8, 1959.
Rehearing Overruled October 7, 1959.
and
SOUTHWEST WEATHER RESEARCH, INCORPORATED, ET AL V.
JIM DUNCAN ET AL.
No. A-7201. Decided July 8, 1959.
Rehearing Overruled October 7, 1959.
(327 S.W. 2d Series 417)

*Raymond A. Lynch, Turpin, Kerr, Smith & Dyer* and *Wm. Monroe Kerr,* all of Midland, for petitioner in both cases.

The Court of Civil Appeals erred in holding that the petitioner has absolutely no right to in any manner seed the clouds or effect the weather over respondents land, and in holding that the trial court did not abuse his discretion in granting the injunction. Galveston City Surf Bathing Company v. Heidenheimer, 63 Texas 559; Gulf, C. & S. F. Ry. Co. v. Oakes, 94 Texas 155, 58 S.W. 999; Motl v. Boyd, 116 Texas 82, 286 S.W. 458; Turner v. Big Lake Oil Co., 128 Texas 189, 96 S.W. 2d 221.

*Henry Russell,* of Pecos, *Tom Sealy, W. B. Browder, Jr.,* and *Milton L. Bankston,* all of Midland, for Jones and others, and *Hunter O. Metcalf* and *William H. Earney,* of Marfa, and *Dan Moody* of Austin, for Duncan, respondents.

In reply to the points presented by petitioner cited Miller v. Letzerich, 121 Texas 248, 49 S.W. 2d 404; Spann v. City of Dallas, 111 Texas 350, 235 S.W. 513; Lower Colorado River Authority v. Camp Warnecke, 267 S.W. 2d 840.

MR. JUSTICE NORVELL delivered the opinion of the Court.

These are artificial weather control cases. In both causes the trial judge issued temporary injunctions which were modified substantially by the Court of Civil Appeals. See, Southwest Weather Research, Inc. v. Rounsaville, 320 S.W. 2d 211, (the Jones case in this Court) and Southwest Weather Research, Inc. v. Duncan, 319 S.W. 2d 940. For all practical purposes the two cases present identical questions of law and may be disposed of in one opinion.

1   The respondents assert that this Court is without potential jurisdiction of these cases and that the writs of error should be dismissed because they were improvidently granted. By an amendment to the application for writs of error, petitioners assert jurisdiction under the provisions of Article 4662, Vernon's Ann. Texas Stats.

In Weaver v. Board of Trustees of Wilson Independent School District, 143 Texas 152, 183 S.W. 2d 443, it was held that this Court, by virtue of the provisions of said Article 4662, "has jurisdiction to review, by writ of error, the ruling of the trial court in granting or refusing a temporary injunction where the main case out of which the application for injunction grew

is one over which the Supreme Court has jurisdiction. Houston Oil Co. of Texas v. Village Mills Co., 109 Texas 169, 202 S.W. 725; Spence v. Fenchler, 107 Texas 443, 449, 180 S.W. 597, 24 Texas Jur. 286, sec. 230." This Court clearly has jurisdiction of the main cases out of which the temporary injunctions were issued:

The Weaver case was decided after the adoption of the 1941 Rules of Civil Procedure which resulted in the purely procedural aspects of Article 4662 being carried forward in rule form as a part of Rule 385, while the jurisdictional provisions of the Article in statutory form remained unaffected. Acts 1939, 46th Leg., p. 201, Article 1731-a, Vernon's Ann. Texas Stats.

Respondents contend that State v. Wynn, 157 Texas 200, 301 S.W. 2d 76 and International Harvester Co. v. Stedman, 159 Texas 593, 324 S.W. 2d 543, are authorities sustaining their position. Both cited cases relate to pleas of privilege under the writ of error practice outlined by the 1953 amendments to Articles 1728 and 1821 of Vernon's Ann. Texas Stats. Acts 1953, 53rd Leg., p. 1026. The cases before us involve temporary injunctions and in order to construe the 1953 amendment to Articles 1728 and 1821 as precluding Supreme Court review of such injunctions it would be necessary to hold that the 1953 Act impliedly repealed certain provisions of Article 4662. This position is foreclosed by the holding of this Court in Houston Oil Co. of Texas v. Village Mills Co., (1918) 109 Texas 169, 202 S.W. 725 construing the predecessor statutory articles comparable to the present Articles 4662 and 1728, Vernon's Ann. Texas Stats. This Court, speaking through Chief Justice Phillips, said:

"We have not failed to consider the defendant in error's motion to dismiss the cause. The ground of the motion is that the Supreme Court is without jurisdiction to grant a writ of error in appeals from interlocutory orders granting, refusing, or dissolving injunctions — which we have heretofore held is possessed by the court under Articles 4644, 4645 and 4646 where the cause is not of that class of which the jurisdiction of the Courts of Civil Appeals is made final by Article 1591—because, it is urged, these articles were in effect repealed by the Amendment of 1913 to Article 1521, defining the general jurisdiction of the Supreme Court. As was announced during the argument, we have heretofore determined this question in assuming the jurisdiction here disputed by our action upon numerous applications for writs of error in causes of the class of the present

one since amended Article 1521 became effective. The purpose of Articles 4644, 4645 and 4646 was to confer a special jurisdiction upon the Supreme Court in a particular proceeding. They are particular statutes and relate solely to a certain kind of appeals. Amended Article 1521—since amended by the Act of 1917 (Acts 35th Leg. c. 75, sec. 1 [Vernon's Ann. Civ. St. Supp. 1918, Art. 1521])—was a general statute and was expressed in only affirmative terms. It contained no negative provisions. Its purpose was only to define the general jurisdiction of the Supreme Court over causes determined in the Courts of Civil Appeals. It evinced no intention of impairing the special jurisdiction conferred upon the Supreme Court under Articles 4644, 4645 and 4646. There was no absolute repugnancy between it and Articles 4644, 4645 and 4646 since under its terms it was possible for it to have, and it did have, an extensive operation beyond the limited scope of these articles. Under familiar rules there was no implied repeal. Sutherland on Statutory Construction, sections 274-278; Cole v. State, 106 Texas 472, 170 S.W. 1036; State v. McCardy, 62 Minn. 509, 64 N.W. 1133."

Having disposed of the question of this Court's jurisdiction, we turn to the facts of the case. It appears that the petitioners, Southwest Weather Research, Inc. and others, were employed by a large number of farmers in and around Fort Stockton and other areas lying generally in an easterly direction from the Davis Mountains to conduct a hail suppression program. The petitioners fly airplanes through clouds and "seed" them with chemicals and thus prevent hail precipitation. The respondents are owners or lessees of lands in Jeff Davis County and contended that this "cloud seeding" process results in the suppression and prevention of rain to the damage of their lands which are used primarily for ranching purposes. So, with the advance of science we find another point of cleavage and conflict in the long struggle between the ranchman and the farmer.

The trial judge issued pendente lite injunctions restraining petitioners' cloud-seeding activities until the case could be finally determined upon the merits. These injunctions were modified by the Courts of Civil Appeals. In the Rounsaville-Jones case the injunction was rendered applicable only to lands owned by respondents, George Asa Jones, Ted Gray, Walter McElroy, Jr., Davis Medley, H. C. Patterson, Nelson Lethco, Peeler Mathews and Richard Hoefs. The injunction was dismissed insofar as it related to Joe Rounsaville and numerous other plaintiffs in the district court and dissolved as to all lands in Culberson, Terrell, Winkler and Loving Counties, 320 S.W. 2d 217.

Similarly in the Duncan case, the injunction of the trial court was held to be unnecessarily broad in that it restrained defendants (petitioners here) from any activity with reference to the area of plaintiffs' lands and was accordingly modified so as to restrain defendants from "cloud seeding" only as such activities apply directly to plaintiffs' lands. 319 S.W. 2d 945. As we construe the injunctions as modified, they apply only to cloud seeding activities over lands which are owned by the respondents now before us and which directly affect such lands.

The respondents raise a venue (or jurisdictional) question which must be considered. Article 4656, Vernon's Ann. Texas Stats. provides:

"Writs of injunction granted to stay proceedings in a suit, or execution on a judgment, shall be returnable to and tried in the court where such suit is pending, or such judgment was rendered; writs of injunction for other causes, if the party against whom it is granted to be an inhabitant of the State, shall be returnable to and tried in the district or county court of the county in which such party has his domicile, according as the amount or matter in controversy comes within the jurisdiction of either of said courts. If there be more than one party against whom a writ is granted, it may be returned and tried in the proper court of the county where either may have his domicile."

Petitioners contend that under this article the injunctions issued by the District Court of Jeff Davis County and returnable to such court were void because none of the petitioners reside in Jeff Davis County. It is sufficient answer to this contention to point out that the authorities cited by the petitioners, namely, Box v. Oliver, 43 S.W. 2d 979, no writ history; Bridges v. Williams, 154 S.W. 2d 669, no writ history, and Anderson v. Southwestern Presbyterian Home, 248 S.W. 2d 775, er. dis., all by the Waco Court of Civil Appeals, have reference only to cases where injunctive relief is the sole purpose of the suit.

Brown v. Gulf Television Company, 157 Texas 607, 306 S.W. 2d 706 affords an example of this type of suit. The television tower there complained of was erected upon land owned by the company. Brown's complaint was that the tower interferred with the passage of planes through the air space above lands *owned by the company* and thus hampered operations on a landing field owned by Brown. Here, the respondents complain of operations in the air above lands either owned or held by them under leases for grazing purposes. The distinction between the two situations

is made clear in the case of Marshall v. Ballard, Texas Civ. App., 314 S.W. 2d 368 in which case this Court dimissed an application for writ of error based upon the contention that the decision in that case was in conflict with that of this Court in Brown v. Gulf Television Co. We need not and perhaps should not, in view of an impending trial on the merits, attempt a description of the rights of the landowner on the one hand and the rights of those attempting to use the air space above such lands on the other. The purpose of these suits is to secure a definition and settlement of some of these respective rights. It is sufficient to say that the cases made by the petition are ones relating to lands or rights appurtenant to lands and that such suits cannot be classified as suits purely for injunctive relief.

2 In each suit some, although not all, of the lands involved are located in Jeff Davis County. In one case, seemingly the Jeff Davis County lands made the basis of the suit, are held under an agricultural or grazing lease by one of the respondents. The holder of a surface lease for a term of years may sue to vindicate his leasehold estate or prevent damages thereto. In distinguishing between an action for damages for the burning of surface grass and damages to the land itself Mr. Justice Brown, writing for this Court in Knight v. Houston & Texas Central Railway Co., 93 Texas 417, 55 S.W. 558, stated that, "The language, 'damages to land' has been construed by this Court to mean 'an injury to the possession, or to the freehold, or estate.' " This language is plainly descriptive of a type of injury. It cannot be construed or contorted into a holding that only the holder of a freehold estate may sue for damages to land.

Our holding upon the contention discussed is to be narrowly restricted to the point involved. We make no attempt to settle the general venue question. That may be done in the trial court upon proper pleas of privilege and controverting affidavits. We hold that the cases made by the petition are not solely for injunctive relief and hence the fact that the writs of temporary injunction were made returnable to the District Court of Jeff Davis County does not render them void. It is patently unnecessary for us to decide whether or not in a purely injunctive proceeding an improper direction as to the return of the writ would render the writ void.

Upon the merits of the appeal, the petitioners assert that the Court of Civil Appeals erred in holding that petitioners "have absolutely no right to in any manner seed the clouds or affect

the weather over respondents' land, and in holding that the trial court did not abuse its discretion in so holding."

**3**  In our opinion the petitioners have misconstrued the holding of the Court of Civil Appeals. In this case as in most temporary injunction cases the only question presented is whether or not the trial court abused its discretion in issuing (or refusing) the injunction. The Court of Civil Appeals has held that the trial judge did not abuse his discretion in issuing the temporary injunctions, except in certain particulars which resulted in a modification of the decrees by the lower appellate court.

The question then becomes one of whether or not the evidence shows a clear abuse of discretion. The Court of Civil Appeals in the two opinions mentioned has set out the evidence bearing upon the issue and it would serve no useful purpose to repeat the same here. It is sufficient to point out that artificial weather control is an activity which is in its infancy. It is petitioners' position that by seeding clouds with silver iodide or salt brine or both, the particles of matter around which water vapor collects and condenses would be increased. That would result in the formation of smaller drops of moisture and ice pellets and thus prevent the formation of destructive hail stones. It is respondents' contention that this seeding and increase of foreign matter particles actually causes the moisture to form in such small drops that it is forced up in the warm air currents arising from the ground and thus dissipated, with the result that neither rain nor hail falls in the land beneath. Petitioners stoutly deny that their activities lessen in any way the moisture which naturally would fall over any given area. The testimony adduced upon the hearing was conflicting as is reflected by the opinions of the Court of Civil Appeals. This being the situation, the trial judge's action in restraining further cloud seeding over respondents' land did not constitute an abuse of discretion.

These causes involve complicated scientific problems, as well as the legal determination of the property rights of both the landowners on one hand and those engaged in a business enterprise on the other. Admittedly the case is not fully developed. It has not been tried upon the merits and the sole purpose of the temporary injunctions was to preserve the status quo until these complicated scientific problems and attendant legal questions can be fully considered and a final judgment rendered delineating and determining the rights of litigating parties.

The temporary injunctions undoubtedly place petitioners in

an unfavorable economic position, but our system of procedure is such that legal rights cannot be finally determined upon a hearing relating to the wisdom of expediency of issuing a status quo order. Deliberate action is essential for the accurate determination of legal rights and upon occasion this can be secured only by issuing a temporary decree protecting a status quo. Ordinarily, the hearing upon the temporary injunction is not a substitute for, nor does it serve the same purpose as the hearing on the merits. Generally the most expeditious way of obviating the hardship and discomforture of an unfavorable preliminary order is to try the case on its merits and thus secure a hearing wherein the case may be fully developed and the courts, both trial and appellate, may render judgments finally disposing of controversies.

The judgments of the Court of Civil Appeals are affirmed.

Opinion delivered July 8, 1959.

Rehearing overruled October 7, 1959.